UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS GEARING, et al.,

               Plaintiffs,

    v.

CITY OF HALF MOON BAY,

               Defendant.

Case No. 21-cv-01802-EMC

**ORDER GRANTING DEFENDANT'S MOTION TO ABSTAIN, AND STAYING CASE**

Docket No. 17

Plaintiffs filed a § 1983 suit against the City of Half Moon Bay and Does 1-10, inclusive, alleging, *inter alia*, a regulatory taking of Plaintiff's undeveloped land in violation of the Fifth and Fourteenth Amendments.  Complaint (Docket No. 1).  Plaintiffs allege that the City unconstitutionally designated their land as a public park and stymied development through land use regulations.  About one week after Plaintiffs filed suit in federal court, the City filed an eminent domain action involving the same parties and property in state court, *City of Half Moon Bay v. Gearing, San Mateo County Superior Court*, Case No. 21-CIV-01560 (filed March 23, 2021).  Before the Court is the City's Motion to Abstain from adjudicating the federal action under the *Pullman* abstention doctrine.  Docket No. 17.  Also before the Court are Plaintiffs' Objection to Reply Evidence (Docket No. 28), Plaintiffs' two Requests for Judicial Notice (Docket No. 28-1; Docket No. 37), and the City's Request for Judicial Notice (Docket No. 41).

## I.     BACKGROUND

A.     Factual Background

In the complaint, Plaintiffs allege as follows.

Plaintiffs Thomas and Daniel Gearing are the owners of six undeveloped parcels of land in

the West of Railroad area of the city of Half Moon Bay.  Compl. ¶¶ 1-2.  This case challenges the constitutionality of the conditions for approval that govern development within the West of Railroad area.  *Id.* ¶ 9.  For approximately 40 years, West of Railroad has been designated a public recreation park by the City, and the entire 32 acres (which includes Plaintiffs' properties) have been walked over regularly as a means of public access to a coastal trail along the beach.  *Id.* ¶ 15.  By designating West of Railroad as a regional park and unconstitutionally treating it as a park, the City's unconstitutional regulations, treatment, activities, physical invasions, and actions have constituted a taking of Plaintiffs' properties without just compensation.  *Id.* ¶ 16.

In 1993, the City certified its Land Use Plan ("LUP"), Section 9.3.5 of which provides: "[n]o development shall be permitted until an opportunity for acquisition and addition to the state beach has been allowed and the State Department of Parks and Recreation has indicated no intent to acquire.  Such determination by the State Department of Parks and Recreation shall be made within one year after certification of the Land Use Plan."  *Id.* ¶ 18.  Section 9.3.5 of the LUP also contemplates that "limited residential development" could be permitted in West of Railroad if State acquisition is not possible, provided there is a "complete replanning and re-platting of the area."  *Id.* ¶ 20.  However, the City excluded Plaintiff's parcels from among those sites which it considered for development.  *Id.* ¶ 28.

Plaintiff Thomas Gearing has paid his property taxes for his parcels with reasonable investment-backed expectation that he would one day be allowed to build single-family residential homes.  *Id.* ¶ 25.  However, the City has unconstitutionally lowered the value of the individual lots in West of Railroad through, *inter alia*, misrepresenting the existence of wetlands and sensitive habitats on Plaintiffs' parcels, physically invading the property, and clouding fee title by announcing its intent to condemn the property without initiating eminent domain proceedings.  *Id.* ¶ 29.

In 2019, the state legislature enacted Senate Bill 330 ("S.B. 330"), The Housing Accountability Act, which applies to applications to build dwelling units on existing residential lots.  *Id.* ¶ 32.  S.B. 330 is a 2019 statute that was adopted by the California legislature to streamline local governments' evaluation of applications for proposed residential development

United States District Court
Northern District of California

1    projects.  2019 Cal. Stat. ch. 654; *see* Compl. ¶ 32.  Notably, S.B. 330 prohibits a local agency

2    from disapproving or conditioning approval in a manner that renders infeasible, a housing

3    development project for very low, low, or moderate income households unless the local agency

4    makes specified written findings based on a preponderance of the evidence in the record.  2019

5    Cal. Stat. ch. 654.  On October 1, 2020, Plaintiffs submitted an application, pursuant to S.B. 330,

6    to build dwelling units on their lots.  Compl. ¶ 33.  On October 13, 2020, the City informed

7    Plaintiffs that it would not consider their application because it did not comply with LUP Section

8    9.3.5, which requires adoption of a specific land use plan.  *Id.* ¶ 34.  Plaintiffs were told by the

9    City Council that this decision was not appealable.  *Id.* ¶ 35.

10         Based on the foregoing, Plaintiffs allege:  (1) violations of 42 U.S.C. Section 1983 and the

11   Fourteenth Amendment's Due Process Clause for the City's decision to impose conditions on the

12   development of the subject lots and its refusal to prepare a specific plan for development of the

13   West of Railroad lots; (2) a regulatory taking in violation of 42 U.S.C. Section 1983 and the Fifth

14   and Fourteenth Amendments for the City's deprivation of any economically viable use for the

15   subject lots and for Plaintiffs' investment-backed expectations; (3) a physical taking in violation of

16   42 U.S.C. Section 1983 and the Fifth and Fourteenth Amendments for the City's designation of

17   the subject lots as a public recreation park and its physical intrusion onto the subject lots on

18   numerous occasions; and (4) a violation of the Equal Protection Clause under the Fourteenth

19   Amendment and 42 U.S.C. Section 1983 for the City's selective imposition of restrictions and

20   requirements on the subject lots.  *Id.* ¶¶ 40-50.

21   B.    Procedural Background

22         In 2020, the City Council approved an update to the Land Use Plan ("LUP"), which allows

23   residential development in the West of Railroad area but prioritizes public acquisition with the

24   intent of preserving the surrounding blufftop area for its significant habitat, coastal access and

25   recreation, and scenic value.  Defendant's Mot. to Abstain ("Mot.") at 4-5.  The City wishes to

26   address the runoff and erosion concerns along this blufftop area and ensure continued public

27   access for recreational opportunities.  *Id.* at 5.

28         The City is in the process of acquiring Plaintiffs' lots to implement the 2020 LUP update.

3

United States District Court
Northern District of California

1   *Id.* Prior to exercising the power of eminent domain, a local jurisdiction must appraise the

2   property it seeks to acquire, then make an offer to purchase the property based on that appraisal.

3   *Id.* (citing Cal. Gov't Code § 7267.2).  If unable to reach agreement on a purchase price with the

4   property owner, the jurisdiction may adopt a Resolution of Necessity ("RON") which authorizes

5   the filling of an eminent domain action in state court.  *Id.* (citing Cal. Civ. Proc. Code § 1245.220).

6   On December 22, 2020, the City delivered to Plaintiffs a Notice of Decision to Appraise, a

7   precursor to eminent domain; prior to adopting a RON, a "public entity," pursuant to Cal. Gov't

8   Code § 7267.2(a)(1), "shall establish an amount that it believes to be just compensation therefor,

9   and shall make an offer to the owner or owners of record to acquire the property for the full

10  amount so established, unless the owner cannot be located with reasonable diligence."  On January

11  21, 2021, the City made a formal offer to purchase Plaintiffs' property for the fair market value as

12  determined by the City's appraisal.  *Id.*  Plaintiffs did not accept the offer, and the City

13  subsequently adopted an RON at a March 16 hearing, which authorized the City Attorney to

14  acquire the property by condemnation.  *Id.*  On March 23, the City filed an eminent domain action

15  in state court, and on June 22, the City filed a Motion for Immediate Possession, requesting

16  possession of the property by October 1, or as soon thereafter as possible.  *Id.* at 5-6.  The City

17  states that the state court has yet to rule on this motion.

18      Plaintiffs filed this suit on March 15, 2021, the day before the City Council hearing on the

19  RON (and eight days before the eminent domain action was filed by the City in state court).

20  Docket No. 1.  In the state eminent domain proceedings, Plaintiffs moved to stay proceedings

21  pending resolution of the instant case.  Mot. at 6.  On September 2, 2021, the superior court denied

22  Plaintiffs' motion without prejudice.[1]  *See* Def. Request for Judicial Notice at 1, Docket No. 41.

23  _____

24  [1] On September 8, 2021, the City filed a judicial notice of the state superior court's minute order
    denying Plaintiff's motion to stay the eminent domain proceedings in this Court.  Def. Request for
25  Judicial Notice, Ex. A, Docket No. 41.  The Court can properly take judicial notice of this
    document because it can be accurately and readily determined from sources whose accuracy
26  cannot reasonably be questioned and their authenticity is not disputed.  *See* Fed. R. Evid. 201;
    *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take
27  judicial notice of this information, as it was made publicly available by government entities . . . ,
    and neither party disputes the authenticity . . . or the accuracy of the information displayed
28  therein.").  Accordingly, this Court grants the City's request for judicial notice.  However, it does
    not take notice of the truth of matters stated in those documents.  *In re High–Tech Employee*

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   <u>LEGAL STANDARDS</u>

A.   <u>*Pullman* Abstention</u>

*Pullman* abstention is "an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." *San Remo Hotel v. City & Cty. of S.F.*, 145 F.3d 1095, 1104 (9th Cir. 1998). *Pullman* abstention is appropriate where:

> "(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.
>
> (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.
>
> (3) The possibly determinative issue of state law is doubtful."

*Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996). *Cf. Courthouse News Serv. v. Planet*, 750 F.3d 776, 783-84 (9th Cir. 2014) (same elements). The doctrine does not exist for the benefit of either party, but rather "for 'the rightful independence of the state governments and for the smooth working of the federal judiciary.'" *San Remo Hotel*, 145 F.3d at 1105 (quoting *R.R. Com. of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941)).

B.   <u>Fifth Amendment Takings Jurisprudence</u>

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Previously, a landowner could not bring a Takings Claim under the Fifth Amendment until they exhausted the administrative procedures available at the state level. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985) ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue"). This came to be known as the "state-litigation requirement."

---

*Antitrust Litig.*, 856 F.Supp.2d 1103, 1108 (N.D.Cal.2012) ("A court may also take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein.").

1    In *Knick*, the Supreme Court overruled the state-litigation requirement and held that "[a] property

2    owner has an actionable Fifth Amendment takings claim when the government takes [] property

3    without paying for it."  *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019).  Thus, a property

4    owner "has suffered a violation of his Fifth Amendment rights when the government takes his

5    property without just compensation, and therefore may bring his claim in federal court under §

6    1983 at that time."  *Id.* at 2168.  The property owner need not exhaust state court proceedings

7    before suing in federal court.

8         However, the government's decision challenged by the property owner must be final, a

9    requirement not disturbed by *Knick*.  The Supreme Court has clarified the standard for showing

10   the final agency action necessary to ripen an as-applied claim under the Takings Clause.  *See*

11   *Pakdel v. City & Cty. of S.F.*, 141 S. Ct. 2226 (2021) ("[t]he finality requirement is relatively

12   modest.  All a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at

13   issue apply to the particular land in question'") (quoting *Suitum v. Tahoe Reg'l Planning Agency*,

14   520 U.S. 725, 739 (1997)).

15                          **III.       DISCUSSION**

16   A.    The Effect of *Knick* on *Pullman*

17        Defendant asks this Court to abstain in favor of the state court eminent domain suit under

18   *Pullman*.  Plaintiffs argue *Pullman* abstention in cases such as this is no longer appropriate after

19   *Knick* and *Pakdel*.  Opp'n at 11-16.  The Court thus examines this threshold question.

20        In overruling the state-litigation requirement in *Williamson Cty. Reg'l Planning Comm'n*,

21   473 U.S. 172, the Supreme Court in *Knick* explained that due to that exhaustion requirement a

22   takings plaintiff faced a Catch-22:  "[h]e cannot go to federal court without going to state court

23   first; but if he goes to state court and loses, his claim will be barred in federal court" by the

24   preclusive effect of the state court judgment under *San Remo*.  *Knick*, 139 S. Ct. at 2167.

25   Plaintiffs contend that invocation of *Pullman* abstention would implicate the same "*San Remo*

26   trap"; permitting the state court action to proceed would lead to collateral estoppel, depriving the

27   property owner of their rights to litigate to bring their takings claims in federal court.  Plaintiffs

28   contend that "as a prerequisite to resolution of the issue of just compensation, the federal

United States District Court
Northern District of California

1    constitutional claim will have to be resolved by the state court." Opp'n at 16-17. In short, the

2    dilemma created by the *San Remo* trap mitigates against the state litigation requirement in

3    *Williams.*

4           Plaintiffs' assertion is without merit. First, nothing in *Knick* or *Pakdel* purports to overrule

5    or even mentions *Pullman* or any other abstention doctrine. *Knick* and *Pullman* operate in

6    different spheres. *Knick* concerns the *ripeness* of a takings claim. *See Knick*, 139 S. Ct. at 2172

7    (holding, with respect to ripeness, that "a taking without compensation violates the self-executing

8    Fifth Amendment *at the time of the taking*, [and] the property owner *can bring a federal suit* at

9    that time") (emphasis added). The *Pullman* doctrine, on the other hand, does not concern the

10   ripeness and timing of when a federal suit may be filed, nor does it impact *Knick*'s defining when

11   a takings claim accrues. Instead, it addresses the circumstances when an otherwise ripe and

12   properly filed suit may temporarily be held in abeyance in favor of a related state suit where

13   warranted by the principles of comity and federalism. *See Pearl Inv. Co. v. San Francisco*, 774

14   F.2d 1460, 1462 (9th Cir. 1985) (holding that abstention is appropriate "where principles of

15   comity and federalism justify *postponing the exercise of jurisdiction* that Congress conferred upon

16   federal courts") (emphasis added). As the district court recently noted, "*Knick* did not abrogate

17   the abstention doctrines or affect the applicable *Pullman* abstention factors" because the fact

18   "[t]hat a case is properly before a federal court does not deprive the court from abstaining in

19   appropriate circumstances." *Thinh Tran v. Dep't of Planning*, No. 19-00654 JAO-RT, 2020 U.S.

20   Dist. LEXIS 103461, at *18 (D. Haw. June 12, 2020).[2]

21          Second, *Pullman* does not impose a universal prerequisite to suit like the state litigation

22

23   [2] Plaintiffs cite *EHOF Lakeside II, LLC v. Riverside Cty. Transp. Comm'n*, 826 F. App'x 669 (9th
     Cir. 2020) to suggest that there is an "altered landscape in this area of the law" following *Knick*.
24   Opp. at 3. *EHOF Lakeside II* is an unpublished Ninth Circuit opinion wherein the plaintiff first
     brought an inverse condemnation claim in state court and subsequently brought a Fifth
25   Amendment Takings Claim under § 1983 in federal court. *EHOF Lakeside II*, 826 F. App'x at
     669. The Ninth Circuit found that all three *Pullman* abstention requirements had been met, and
26   that because the state court action had been filed before *Knick*, it need not "decide the precise
     scope of *Pullman* in the post-*Knick* world." *Id.* at 670. For the reasons discussed herein, there is
27   no reason why *Knick* cannot be harmonized with the *Pullman* abstention doctrine, especially as
     discussed *infra*, where Plaintiffs may make an *England* reservation in the state court eminent
28   domain proceedings to preserve their ability to adjudicate their federal takings claims in a federal
     court.

United States District Court
Northern District of California

1    exhaustion requirement in *Williamson County*.  *Pullman* abstention is implicated only when there

2    happens to be coordinate suits in both state and federal courts and where the federal court finds the

3    *Pullman* requirements are met and chooses to exercise its discretion to abstain.  It does not have

4    the sweeping and unavoidable effect of *Williamson County's* state-exhaustion requirement.  *See*

5    *Knick*, 139 S. Ct. at 2167 (citing *San Remo Hotel*, 145 F.3d 1095) ("a state court's resolution of a

6    claim for just compensation under state law *generally* has preclusive effect in any subsequent

7    federal suit.") (emphasis added).

8            Third, the threat of being deprived of an opportunity to litigate the due process, equal

9    protection, and regulatory takings claims in federal court as a result of collateral estoppel is

10   substantially mitigated by the fact that the landowner "may readily forestall any conclusion that

11   [they have] elected not to return to the District Court" to adjudicate their federal claims by

12   informing the state court of their intention "to return to the District Court for disposition of [their]

13   federal contentions."  *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 421 (1964)).  This

14   is known as an *England* reservation.  *See Los Altos El Granada Inv'rs v. City of Capitola*, 583

15   F.3d 674, 687 (9th Cir. 2009) (holding that a party "may accomplish a reservation of federal

16   claims by making on the state record the reservation to the disposition of the entire case by the

17   state courts") (internal citation omitted).  The *England* reservation provides "a backstop for cases

18   . . . [where] a state court might mistakenly attempt to eliminate th[e] right" to try federal claims in

19   federal court.  *Id.* at 688.  *Cf. Colony Cove Props., LLC v. City of Carson*, 220 Cal. App. 4th 840,

20   879 (2013) ("[t]he presence of the *England* reservation clarifies in a manner helpful to both the

21   court and the opposing party that a litigant wishes to limit the state court action to state issues").

22   In this case, the eminent domain action need not resolve the federal constitutional questions as to

23   whether Plaintiffs' rights to due process and equal protection were violated and whether there was

24   a regulatory taking prior to the use of eminent domain.  The regulatory takings claim is likely to

25   turn on such factors as the nature and magnitude of any investment backed expectations and the

26   extent and effect of land use regulations on permissible uses.  *See Lingle v. Chevron U.S.A. Inc*.

27   544 U.S. 528, 538-539 (primary factors for evaluating regulatory takings claims are the economic

28   impact of the regulation on the claimant, "particularly the extent to which the regulation has

1    interfered with the distinct-investment-backed expectations") (quoting *Penn Central Transp. Co.*

2    *v. New York City*, 438 U.S. 104, 124).  The eminent domain action, on the other hand, is not

3    dependent on whether there had been a regulatory taking.  Hence, an *England* reservation provides

4    an adequate safeguard against the "*San Remo* trap."  *See Allen v. McCurry*, 449 U.S. 90, 103-04,

5    101 S. Ct. 411, 419-20 (1980) (holding that there "no reason to believe that Congress intended to

6    provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already

7    decided in state court simply because the issue arose in a state proceeding in which he would

8    rather not have been engaged at all.").

9        Fourth, the Supreme Court decision in *Knick* was intended to restore takings rights under

10   the Fifth Amendment to the same constitutional status of other constitutional rights.  *See Knick*,

11   139 S. Ct. at 2169-2170 ("Fidelity to the Takings Clause and our cases construing it requires

12   overruling *Williamson County* and restoring takings claims to the full-fledged constitutional status

13   the Framers envisioned when they included the Clause among the other protections in the Bill of

14   Rights.").  The Court noted that the *Williamson County* exhaustion requirement imposed a burden

15   not applicable to other federal constitutional rights.  In contrast, to categorically exempt takings

16   claims from *Pullman* abstention, while subjecting all other constitutional rights to it, rather than

17   *restoring* takings rights under the Fifth Amendment to the same constitutional status of other

18   constitutional rights, *Knick*, 139 S. Ct. at 2170, would *exalt* takings claims over all others.

19   *Pullman* abstention presumes there is a federal constitutional right at issue, yet the doctrine

20   recognizes that the interests of comity and federalism sometimes warrant abstention in favor of

21   state court action.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) ("Federal

22   courts abstain out of deference to the paramount interests of another sovereign, and the concern is

23   with principles of comity and federalism.").  Thus, *Knick* does not categorically preclude district

24   courts from applying the *Pullman* doctrine where the prerequisites are met, even where such rights

25   as equal protection or due process are involved.  *See e.g. Richardson v. Koshiba*, 693 F,2d 911,

26   912 (9th Cir. 1982) (abstention was proper where the plaintiff alleged that his constitutional right

27   to due process was violated but "the need to decide [] federal issues could be obviated by

28   resolution of [] state law issues presented in this case . . . [and it would be] more appropriate to

United States District Court
Northern District of California

9

have Hawaii's courts decide [] sensitive questions of state law controlling judicial appointments"];

*See Pearl Inv. Co.*, 774 F.2d at 1462-65 (affirming the district court's stay of federal proceedings and abstention under *Pullman* where the plaintiff alleged substantive and procedural due process claims, an equal protections claim, and an inverse condemnation claim). As the Supreme Court acknowledged in *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959), it has "required district courts . . . to stay their proceedings pending submission of the state law question to state determination" where the "issue touched upon the relationship of City to State," or "involved the scope of a previously uninterpreted state statute . . . ." *Id*. at 28; *see Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 229. There is no categorical exemption for eminent domain suits — the Supreme Court recognized the "considerations that prevailed in conventional equity suits for avoiding . . . disruption by federal courts of state government . . . are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court." *Louisiana Power & Light Co.*, 360 U.S. at 28. The Supreme Court noted that due to its "special nature," eminent domain "justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively—the courts of the State under whose statute eminent domain is sought to be exercised . . . ."). *Id*. at 29.

B.    Application of the Pullman Abstention Doctrine

The City argues that all three requirements for application of the *Pullman* abstention doctrine are met:  (1) the case touches on a sensitive area of social policy at the state level; (2) the Constitutional claims can be narrowed or avoided by a definitive ruling by the state court on the state claims; and (3) the possibly determinative issue of state law is uncertain. Mot. at 11-17.

1.    Sensitive Issues of State Social Policy

The first *Pullman* requirement asks whether "[t]he complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Sinclair Oil Corp.*, 96 F.3d at 409. The Ninth Circuit has consistently "held that 'land use planning is a sensitive area of social policy that meets the first requirement for *Pullman* abstention.'" *Id.* (quoting *Kollsman*, 737 F.2d at 833).

United States District Court
Northern District of California

1    In the instant case, Plaintiffs allege in the complaint that:  the City unlawfully deprived

2  them from developing the subject lots for any economically beneficial use when they were zoned

3  for R1 single-family residential use at the time Plaintiffs acquired them (*see* Compl. ¶ 10); the

4  City's application of Section 9.3.5 of its Land Use Plan to Plaintiffs' lots constitutes a regulatory

5  taking and an unconstitutional restriction on development (*see* Compl. ¶¶ 18-24, 29-30); and the

6  City's denial of Plaintiffs' application for development of the subject lots under S.B. 330 was

7  unlawful (*see* Compl. ¶¶ 31-35).  As such, Plaintiffs' claims touch on various land use policies,

8  namely Section 9.3.5 of the City's Land Use Plan and S.B. 330.  Moreover, these land use issues

9  appear to fit within the area of sensitive social policies recognized by the Ninth Circuit under the

10  first *Pullman* requirement.  *See Rancho Palos Verdes Corp. v. Laguna Beach*, 547 F.2d 1092,

11  1094-95 (9th Cir. 1976) (holding, in a case wherein the "complaint involve[d] land use planning,"

12  that the first *Pullman* requirement had been met because "California is attempting to grapple with

13  difficult land use problems through new policies and new mechanisms of regulation" and

14  "[f]ederal courts must be wary of intervention that will stifle innovative state efforts to find

15  solutions to complex social problems").

16    Plaintiffs argue that "strict deference to local sensitivity [on land use issues] seems

17  unwarranted today."  Opp'n at 12.  Because the regulation at issue, Land Use Plan Section 9.3.5,

18  was enacted 35 years ago, Plaintiffs argue that the Court does not need to pay deference to the

19  City's efforts to "innovate and solve complex social problems" which are no longer novel.  *Id.*

20  Plaintiffs note that the Ninth Circuit's application of the *Pullman* doctrine in *Rancho Palos Verdes*

21  was premised on the notion that federal courts should not intrude upon novel state laws which

22  seek to grapple with complex social problems.  *Id.  See Rancho Palos Verdes Corp.*, 547 F.2d at

23  1094-95 (finding that the first *Pullman* requirement was satisfied given the "web of [recent]

24  statutes" which sought to provide innovative solutions to complex land use problems).  As such,

25  Plaintiffs argue that reasoning in *Rancho Palos Verdes* does not apply to the instant case because

26  the state and local policies at issue are no longer novel.  Opp'n at 12.

27    Notably, Plaintiffs' complaint implicates S.B. 330, the Housing Crisis Act of 2019, which

28  was enacted to alleviate California's housing crisis and aims to increase residential unit

11

development and expedite permit processing. *Senate Bill 330 (Housing Crisis Act of 2019)*, City of Newport Beach, https://www.newportbeachca.gov/government/departments/community-development/planning-division/housing/senate-bill-330-housing-crisis-act-of-2019 (last visited 7/29/21). *See* Compl. ¶ 32 ("Senate Bill 330 applies to applications to build dwelling units on existing residential lots"). Plaintiffs allege that they are "intended beneficiar[ies]" of S.B. 330, and that they will be forced to leave the state and be separated from their families if they are not allowed to build on their own land due to the lack of affordable housing in California. *Id.* ¶ 31. Thus, like the web of recently enacted statutes in *Rancho Palos Verdes*, S.B. 330 is a recently enacted statute that addresses complex land use problems (i.e., low to medium residential housing development). As such, the rationale behind the first *Pullman* abstention requirement (deference to the efforts of localities to address complex land use problems through novel policies) applies here.

Because this case concerns a dispute over the City's land use planning policies and implicates S.B. 330, the first requirement for *Pullman* abstention is met.

### 2. Avoidance or Narrowing of Constitutional Claims

The second *Pullman* factor asks whether "the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues." *San Remo Hotel*, 145 F.3d at 1104. *Cf. Bank of Am. Nat'l Tr. & Sav. Asso. v. Summerland Cty. Water Dist.*, 767 F.2d 544, 547 (9th Cir. 1985) ("the important [abstention] factor is not whether the constitutional issues are uncertain, but whether their resolution depends on state law and the extent to which they can be eliminated or simplified by state court proceedings").

The City argues that this factor is satisfied because the judgment in the state eminent domain action will largely moot the takings claims asserted in the instant case by transferring title to the City and providing just compensation to Plaintiffs for that transfer. Mot. at 14. Moreover, the City notes that the eminent domain proceeding will provide compensation for the *permanent* physical taking. *Id.* (citing Cal. Civ. Proc. Code § 1263.310) ("[c]ompensation shall be awarded for the property taken. The measure of this compensation is the fair market value of the property taken"). This could simplify but not entirely obviate the federal takings claims because, the state

United States District Court
Northern District of California

court proceedings will not likely address the alleged *temporary* takings claim.[3]  In eminent domain proceedings, landowners receive the fair market value of their home, as measured on the date on which the deposit is made.  *See* Cal. Civ. Proc. Code § 1263.110(a) (in an eminent domain proceeding, "the date of valuation [of the property] is the date on which the deposit is made").  Plaintiffs allege that the City's denial of their October 13, 2020, application for development under S.B. 330 was a regulatory taking.  *See* Compl. ¶¶ 33-35.  The City did not make the deposit on the probable compensation for Plaintiffs' property until March 30, 2021 (five months later).  *See* Reply at 4 n.2; Gonzalez Decl. ¶ 9 (Docket No. 17-1).

This narrowing of the federal constitutional claim satisfies the second *Pullman* factor.  *See. C-Y Dev. Co. v. Redlands*, 703 F.2d 375, 379-80 (9th Cir. 1983) (finding the second *Pullman* factor satisfied and abstention appropriate when the state court proceedings might resolve the *permanent* regulatory taking by the state, even though Plaintiff may subsequently return to federal court seeking damages for an alleged *temporary* deprivation of its property rights); *Sakatani v. City & Cty. of Honolulu*, No. 18-00331 JAO-RLP, 2019 U.S. Dist. LEXIS 32190, at *8-9 (D. Haw. Feb. 28, 2019) (finding second *Pullman* factor satisfied because adjudication of the state law claims may "transform Plaintiffs' federal takings claim from a permanent taking to a mere temporary taking").

### 3.   Unresolved Questions of State Law

The third *Pullman* abstention factor asks whether "resolution of the possible determinative issue of state law is uncertain."  *Courthouse News*, 750 F.3d at 783-84.

Here, the City contends that the third factor is met because the City's land use plan, zoning ordinance, and S.B. 330 have not been construed by California courts and are also at issue in the state eminent domain proceeding.  Mot. at 17.  The City points to a letter in which Plaintiffs acknowledge that S.B. 330 enacts "sweeping changes" to the construction of dwelling units that

---

[3] Where there is a regulatory taking that deprives landowners of all beneficial uses of the property, landowners can bring an action for inverse condemnation and seek damages for that temporary taking.  *See First English Evangelical Lutheran Church v. Cty. of L.A.*, 482 U.S. 304, 321, 107 S. Ct. 2378, 2389 (1987) ("where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective").

United States District Court
Northern District of California

1  are "extraordinarily complex." *Id.* *See* Gonzalez Decl., Ex. E at 2 (Docket No. 17-1).  In

2  response, Plaintiffs claim that there are no relevant issues of state land use regulation yet to be

3  considered by the state courts which would require this Court to resolve an uncertain

4  determinative issue of state law.  Opp'n at 9.  Notably, the City states that "the parties dispute

5  whether S.B. 330 preempts the City's land use controls" as Plaintiffs claim that S.B. 330 gives

6  them "the right to immediately move forward with building dwelling units" and serves as an

7  exception to local land use regulations.  Mot. at 16.  Additionally, in its opposition to Plaintiffs'

8  motion to stay proceedings in the state eminent domain proceeding, the City notes that "resolution

9  of the correct measure and amount of just compensation, including whether S.B. 330 applies to the

10  Property, will moot or at least significantly narrow [Plaintiffs'] federal claims as the City will have

11  conceded liability of the value of [Plaintiffs'] fee interest in the Property and a jury will determine

12  the amount of just compensation."  Pls. RJN, Ex.1, Opp'n to Mot. to Stay at 13, Docket No. 37-1.

13  Hence, there is likely an interplay between the applicability of S.B. 330 and the value of just

14  compensation fixed by the state court in the eminent domain proceeding.

15      An interpretation of S.B. 330 will also likely inform the regulatory takings analysis herein.

16  In particular, the instant complaint appears to challenge the way in which S.B. 330 operates,

17  particularly in relation to section 9.3.5 of the City's LUP.  Plaintiffs allege that they submitted

18  "their preliminary application for development under Senate Bill 330 to build dwelling units on

19  their lots."  Compl. ¶ 33.  The City informed Plaintiffs that it "refused to consider the application

20  based upon LUP section 9.3.5 and the requirement of adoption of a specific plan, among other

21  reasons."  *Id.* ¶ 34.  And when Plaintiffs sought to appeal this determination to the City Council,

22  they were informed by the City that it had not taken any action that would constitute an appealable

23  decision.  *Id.* ¶ 35.  Thus, Plaintiffs' complaint implicates (1) the procedures for building dwelling

24  units set out in S.B. 330, a novel and complex state law, and (2) the interaction between S.B. 330

25  and LUP section 9.3.5, and whether the requirement that Plaintiffs adopt a specific land use plan

26  contravenes S.B. 330.

27      Because the state court proceeding may resolve novel issues regarding S.B. 330, the third

28  *Pullman* factor is met.  *See Rancho Palos Verdes Corp.*, 547 F.2d at 1095 (finding the third

1    *Pullman* requirement was satisfied because possible determinative questions of state law were

2    uncertain since "recently enacted statutes might be authoritatively interpreted by the California

3    courts to serve as a basis for finding that the defendants acted beyond their statutory authority");

4    *Sederquist v. Tiburon*, 590 F.2d 278, 282-83 (9th Cir. 1978) (holding that the third *Pullman* factor

5    had been met because the reasonableness of the conditions imposed by a locality on the issuance

6    of building permits was "by nature a question turning on the peculiar facts of each case in light of

7    the many local and state-wide land use laws and regulations applicable to the area in question");

8    *San Remo*, 145 F.3d at 1105 (application of local zoning ordinances to the issuance of a

9    conditional use permit raised "uncertain issues of state law").

10     In sum, this case meets each of the three *Pullman* abstention requirements.

11   C. <u>Prejudice to Plaintiffs</u>

12     Plaintiffs argue that, even if the *Pullman* factors are met, abstention would be inappropriate

13   because they will face delay and increased litigation expenses, as well as a diminished opportunity

14   to recover attorneys' fees pursuant to 42 U.S.C. § 1988.  Opp'n at 16-17.  Additionally, Plaintiffs

15   argue that they will have been deprived of their opportunity to have their Fifth Amendment

16   takings claim resolved by this Court since the claim will necessarily be resolved by the state

17   court's determination of just compensation in the eminent domain proceeding.  *Id.* at 17.

18     Plaintiffs seem to be arguing that they have a right to have a *federal court* determine what

19   constitutes "just compensation" for a taking of their property, and that a state court determination

20   of the issue of just compensation would deprive them of this right.  Notably, the Supreme Court

21   has held that the Constitution does not guarantee that Plaintiffs must litigate their federal claims in

22   federal court.  *See Allen*, 449 U.S. at 103-04, 101 S. Ct. at 419-20 ("nothing in the language or

23   legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court

24   judgment or decision when the state court, acting within its proper jurisdiction, has given the

25   parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing

26   and able to protect federal rights").  Further, state law permits Plaintiffs to challenge the taking of

27   their property on federal constitutional grounds.  *See M&A Gabaee v. Cmty. Redevelopment*

28   *Agency of L.A.*, 419 F.3d 1036, 1042 (9th Cir. 2005) (holding that landowners have the ability to

United States District Court
Northern District of California

challenge a government taking in state eminent domain proceedings "based not only on California state standards, but also on 'any other ground provided by law'") (citing Cal. Civ. P. Code § 1250.360(h)).  Should the Plaintiffs not seek an adjudication of their takings claim in the eminent domain suit, they may reserve their regulatory takings claim in this court.  As noted above, particularly with the *England* reservation, their substantive regulatory takings claims will not likely be fully adjudicated in the eminent domain proceeding since the government need not establish a prior regulatory taking in order to advance eminent domain.  And although the value of the property found in the eminent domain case may affect the calculus of damages in the federal takings suit, it would do so primarily in regard to the permanent takings claim.  Its impact, if any, on damages for any temporary takings is less clear.

Moreover, Plaintiffs seek (in addition to their takings claims) damages for a violation of the Due Process clause of the Fourteenth Amendment (the first cause of action), and damages for a violation of the Equal Protection Clause of the Fourteenth Amendment (the fourth cause of action).  Compl., Prayer for Relief ¶¶ 2-3.  Because the due process and equal protection claims are not included in the state court complaint, it appears that the state court will not adjudicate Plaintiffs' due process and equal protection claims.  Again, Plaintiffs may file an *England* reservation in order to preserve their federal claims.  Plaintiffs also may return to federal court and seek attorneys' fees under § 1988 should they prevail on their constitutional claims herein.

Finally, Plaintiffs argue that, if the Court abstains and eminent domain proceedings continued, they would face prejudice in the form of "undue interference from the City."  Opp'n at 17.  Namely, Plaintiffs note that the City seeks prejudgment possession in an effort to deprive Plaintiffs of their right to conduct soil sample studies (to disprove the City's theory that the property consists of sensitive wetlands), of their right to enter the land and have it independently appraised, and of their right to have a contractor estimate the cost to install necessary infrastructure to support development of the lands.  *Id.*  However, Plaintiffs are not seeking prospective injunctive relief in their federal complaint, and it is unclear what relief this Court could offer that would prevent the City from interfering with the land.  Plaintiffs only seek monetary relief.

United States District Court
Northern District of California

1    Accordingly, the Court finds that *Pullman* abstention is warranted.  Permitting a California

2    court to determine the local issues may potentially narrow the issues presented in the federal

3    constitutional litigation in this Court, and the principles of comity and federalism underlying

4    *Pullman* support the court's decision to abstain under the circumstances of this case.  *See C-Y Dev.*

5    *Co.,* 703 F.2d at 380 ("We are satisfied that the potential for . . . a narrowing of the constitutional

6    issues and the principles of comity that will be furthered by allowing the state courts to first pass

7    on the validity of this municipal ordinance under state law are sufficient 'countervailing interests'

8    to justify abstention in this case," quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. at

9    188–89 (1959)).

10                        IV.    <u>OBJECTION TO REPLY EVIDENCE</u>

11    On July 29, 2021, Plaintiffs filed an Objection to Reply Evidence, arguing that the City

12    improperly submitted new argument and evidence "as to matters which should have been foreseen

13    and addressed in connection with [the] original filing . . . ."  *See* Pls. Objection at 1:24-25, Docket

14    No. 28.  The Court does not rely on this evidence in its ruling herein.  Accordingly, the Court

15    denies Plaintiff's request for leave to file a sur-reply brief.

16                        V.    <u>PLAINTIFFS' REQUESTS FOR JUDICIAL NOTICE</u>

17    On July 29, 2021, Plaintiffs submitted a request for judicial notice of the following

18    documents:  (1) City of Half Moon Bay 1996 Local Coastal Land Use Plan; (2) City of Half Moon

19    Bay 2020 Local Coastal Land Use Plan; (3) Complaint in Eminent Domain filed in San Mateo

20    Superior Court Case No. 21-CIV-01560 on March 23, 2021; (4) Notice of Motion and Motion to

21    Stay the Action filed in San Mateo Superior Court Case No. 21-CIV-01560 on June 14, 2021; (5)

22    Defendant's Memorandum of Points and Authorities in Support of Motion to Stay the Action filed

23    in San Mateo Superior Court Case No. 21- CIV-01560 on June 14, 2021; (6) Declaration of

24    Thomas J. Gearing in Support of Defendants' Motion to Stay the Action filed in San Mateo

25    Superior Court Case No. 21- CIV-01560 on June 14, 2021; (7) Notice of Motion and Motion for

26    Immediate Possession filed in San Mateo Superior Court Case No. 21-CIV-01560 on June 22,

27    2021; (8) Memorandum of Points and Authorities in Support of Motion for Immediate Possession

28    filed in San Mateo Superior Court Case No. 21-CIV- 01560 on June 22, 2021; and (9) Declaration

1    of Jill Ekas in Support of City of Half Moon Bay's Motion for Immediate Possession filed in San

2    Mateo Superior Court Case No. 21-CIV-01560 on June 22, 2021.  *See* Pls. RJN, Docket No. 28-1.

3          On August 27, 2021, Plaintiffs submitted a request for judicial notice of the following

4    filings in the state court eminent domain proceeding:  (1) Opposition to Defendants' Motion to

5    Stay; (2) Declaration of Benjamin Gonzalez in Support of Opposition to Defendants' Motion to

6    Stay; (3) Declaration of Jill Ekas in Support of City's Opposition to Defendants' Motion to Stay;

7    (4) Defendants' Reply to Opposition to Motion to Stay the Action; (5) Declaration of Thomas J.

8    Gearing in Support of Defendants' Reply to Opposition to Motion to Stay the Action; (6)

9    Defendants' Request for Judicial Notice in Support of Reply to Opposition to Motion to Stay the

10   Action; (7) Defendant's Evidentiary Objections to Declaration of Jill Ekas Filed in Support of

11   City's Opposition to Motion to Stay.  *See* Pls. RJN, Docket No. 37.

12         The Court can properly take judicial notice of these documents because they can be

13   accurately and readily determined from sources whose accuracy cannot reasonably be questioned

14   and their authenticity is not disputed.  *See* Fed. R. Evid. 201; *Daniels-Hall*, 629 F.3d at 998–99.

15   Accordingly, the Court grants Plaintiffs' requests for judicial notice.  However, it does not assume

16   the truth of matters stated in those documents.  *In re High–Tech Employee Antitrust Litig.*, 856

17   F.Supp.2d at 1108.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

## VI.    <u>CONCLUSION</u>

For the forgoing reasons, the Court grants the City's Motion to Abstain and will retain jurisdiction of the federal constitutional issues pending proceedings in the state court.  On the Court's own motion, the proceedings in Case No. 21-cv-01802 are stayed pending state court proceedings.  The Court grants Plaintiffs' requests for judicial notice and denies Plaintiffs' request to file a sur-reply brief.  The Court grants the City's request for judicial notice.

This order disposes of Docket Nos. 17, 28, 28-1, 37, and 41.

**IT IS SO ORDERED**.

Dated: September 13, 2021

_____
EDWARD M. CHEN
United States District Judge